[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: LX PARTE MOTION FOR ORDER OF CUSTODY
On May 20. 1999, the court (Purtill, JTR) entered judgment in the above-entitled matter. dissolving the parties' marriage and awarding them joint legal and physical custody of their four minor children. The judgment set forth a "specific access schedule" delineating the days when each party would reside with the children.
On February 22, 2000 the Plaintiff filed a motion for post-judgment modification in which he requested sole custody of the children. The court (Kenefick, J.) referred the matter on March 20, 2000 to the Family Relations Office for a custody evaluation. That evaluation, and the Plaintiffs February 22, 2000 motion for change of custody is still pending.
On March 24, 2000, the Plaintiff filed an ex parte motion pursuant to Connecticut General Statute sections 46b-93, 46b-99 and 46b-56 (b) for an emergency order granting him sole custody of the children. In his motion and supporting sworn affidavit, the Plaintiff alleged incidents and circumstances which caused him to fear for the children's ". . . physical safety and emotional well-being." The court (Kenefick, J.) subsequently denied the ex parte request for relief and directed that a hearing on the motion be scheduled.
This court conducted a contested evidentiary hearing on the motion on June 12, 2000. Both parties were present and represented by their counsel. The court-appointed attorney for the minor children also appeared and participated fully in the proceeding.
 FACTUAL FINDINGS
CT Page 7536
The court has carefully considered all of the evidence and testimony at hearing and finds that the following facts were proven by a preponderance of the evidence:
The Defendant resides at a home on Walnut Street in Norwich. She has the children in her physical custody from Saturday at 4 p.m. through Wednesday at 4 p.m. each week.
On the evening of March 19, 2000, Officer Christopher Conley of the Norwich Police Department was dispatched to the Defendant's address on the report of a disturbance there. The Defendant told Officer Conley that she was upset over the pending custody matter and her attempts to evict two of four adult roommates who were residing in the home. The Defendant told the officer that ". . . she had been drinking and wanted to kill herself. (Plaintiff's Exhibit 2). Officer Conley observed that the defendant was emotionally distraught and appeared to be intoxicated. He suggested that the Defendant voluntarily go to the Backus Hospital in Norwich for an evaluation. The Defendant complied and was transported by ambulance to the hospital, where she was evaluated and released at approximately 3:45 a.m. on March 20, 2000.
Officer Conley did not believe it was necessary to refer the Defendant's childlren to the Department of Children and Families (DCF) as a result of this incident. The court found Officer Conley's testimony to be very credible.
DCF Social Worker John Kelly subsequently received a referral about this incident from another source. He testified that his agency received three complaints about the condition of the minor children and that he was assigned to investigate. His investigation focused on the March 19 incident at the family home, and on the following allegations: (1) that the children had inadequate housing; (2) that two of the children had been medically neglected; (3) that the children were being inadequately supervised and educationally neglected; and (4) that the Defendant's alleged emotional and substance abuse problems interfered with her ability to properly care for the children.
According to Mr. Kelly and other witnesses, four adults, in addition to the Defendant, reside in the Walnut Street residence. Mr. Kelly dud not perceive those individuals to pose an immediate threat to the health or safety of the children.
DCF's investigation is ongoing. Mr. Ke]ly did not believe that the situation required the children to he removed from the mother's care on an emergency basis. He did not seek an ex-parte order for the children's CT Page 7537 temporary custody, and he has not filed neglect petitions. Mr. Kelly indicated that the Defendant has signed a service agreement with DCF. Pursuant to that agreement, the Defendant has agreed to receive a substance abuse evaluation, undergo drug. testing, cooperate with recommended substance abuse and/or mental health treatment, and refrain from using or possessing alcoholic beverages and illegal drugs. The social worker testing that the mother was cooperating "slowly" and had failed to document her participation in follow-up treatment. However, credible evidence presented at the hearing established that the Defendant has undergone some random drug testing since March 19, and that none of those tests were positive for illegal drugs.
Mr. Kelly is unaware of any new police contacts or disruptive incidents at the Walnut Street residence. The court found Mr. Kelly's testimony to be credible, and ascribes great weight to his assessment that there is not an immediate threat to the health or safety of the children which would require their removal from the mother on an emergency basis.
 DISCUSSION
The court has carefully considered all of the evidence and testimony presented at hearing, including the testimony of other witnesses, which has not been summarized or referred to herein.
The court does not find that the Plaintiff has established by a preponderance of the evidence either that the children are in immediate danger of physical injury or other serious harm when in the care of their mother, or that it is presently in the bests interests of the children to modify the existing shared custody arrangement and award their custody solely to the Plaintiff on an emergency basis.
The March 19th incident and the other circumstances alleged by the Plaintiff certainly warrant the scrutiny and consideration of both this court, and the Department of Children and Families. However, the court finds that since March 19, the Defendant has taken positive steps to remedy the problems which affect her and the children These include her willingness to sign a service agreement with DCF, her compliance with substance abuse evaluation and screening, and her attempts to evict two of the roommates who have been residing in the family home. The court also believes that the ongoing involvement of DCF and the Family Relations Office, the children's frequent contacts with the father under the existing joint custody arrangement, and the pending modification motion, will cause the children's situation to be monitored until the ultimate decision on their custody can be rendered.
For the forgoing reasons, the court hereby DENIES the Plaintiff's CT Page 7538 motion for an emergency change of custody. The court directs that the Family Relations custody evaluation previously ordered by Judge Kenefick continue, and, to the extent possible. be expedited. (To that end, the court directs that a copy of this decision be forwarded by the Clerk to the Family Relations Office at this court.) Upon completion of the custody study, if the parties still disagree, the matter should then be dockcted for a court hearing to decide what custodial arrangements will best serve the interests of the minor children.
The court, on its own motion, further orders that the Defendant mother, within two weeks of the date hereof, enroll in the Parenting Education program, and pay the required fee of the date hereof, enroll in the Parenting Education Program and pay the required fee therefor, as she was ordered to do in the original judgment of dissolution of marriage. Based on the evidence offered at hearing, the court finds that the Defendant has the financial ability to pay said program fee. The court further orders the Defendant to cooperate with, and successfully complete, said program on a timely basis according to the schedule established by the program provider.
Dated at New London, Connecticut this 21st day of June 2000.
BY THE COURT
Dyer, J.